## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |  |
|---|---|---|
| VERINT SYSTEMS INC. and VERINT AMERICAS INC. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. _____  JURY TRIAL DEMANDED |
| Plaintiffs, | | |
| v. | | |
| ENVISION TELEPHONY, INC. | | |
| Defendant. | | |

## <u>COMPLAINT</u>

Plaintiffs, Verint Systems Inc. ("VSI") and Verint Americas Inc. ("VAI") (collectively "Verint"), for their Complaint against Defendant, Envision Telephony, Inc. ("Envision"), allege as follows:

### THE PARTIES

1. Plaintiff VSI is a corporation organized under the laws of the State of Delaware, having its principal place of business at 330 South Service Road, Melville, NY 11747.

2. Plaintiff VAI is a corporation organized under the laws of the State of

Delaware, having its principal place of business at 800 North Point Parkway, Alpharetta, GA 30022.  VAI is a wholly-owned subsidiary of VSI.

3.     Upon information and belief, Defendant Envision is a corporation organized and existing under the laws of the State of Washington, having its principal place of business at 901 Fifth Avenue, Suite 3300, Seattle, Washington 98164.

## JURISDICTION AND VENUE

4.     This action arises under Title 35 of the United States Code. Jurisdiction of this Court is based on 28 U.S.C. §§ 1331 and 1338(a).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b).

## BACKGROUND

5.     Verint is engaged in the business of inventing, developing, manufacturing, selling, installing, and/or distributing computer software and hardware products and systems.  The products and systems are directed to, *inter alia*, the analysis, recording, monitoring, transmission, and/or security of electronic communications, such as but not limited to telephonic, facsimile, and e-mail communications to and from contact centers and call centers which handle incoming and/or outgoing contacts with actual and prospective customers and clients.  Verint's technology can provide an end user with the ability to capture,

2

analyze and act on large volumes of complex, and often underused, information sources, such as voice, video, and unstructured text, which can enhance the ability of organizations of all sizes to make more timely and effective decisions based on such information.  Verint's main location for research and development relating to recording technology is located at VAI's facility in Alpharetta, GA.

6.     Verint's products and systems are used by more than 10,000 organizations in over 150 countries, including over 80 percent of the Fortune 100. For example, Verint's workforce optimization and voice of the customer solutions are designed to, *inter alia*, help organizations enhance customer service operations in contact centers, branches, and back-office environments, which in turn can increase customer satisfaction, reduce operating costs, identify revenue opportunities, and improve profitability.  Verint uses its core competencies to develop highly scalable solutions with advanced, integrated analytics for both unstructured and structured information.   Verint has expended substantial resources inventing and developing this technology.  For example, Verint utilizes more than 1,000 employees and contractors in research and development throughout the world, and has obtained more than 600 patents and applications worldwide.  In 2012 fiscal year alone, Verint obtained issuance or allowance of 50 patents in the United States.  Verint has licensed one or more of the patents to

others in the industry under reasonable terms, through its Open Innovation Network™ ("OIN") licensing program.

7.      On information and belief, Envision develops, uses, sells, offers to sell, installs, distributes, exports, and/or imports computer software products and systems directed to and for use in connection with methods involving the analysis, recording, monitoring, transmission, and security of electronic communications, such as telephonic communications to and from contact centers and call centers.

8.      Upon information and belief, Envision has been developing, using, selling, offering to sell, installing, distributing, exporting, and/or importing computer software products and systems directed to and for use in connection with methods involving the analysis, recording, transmission, and security of electronic communications under various trade designations, including the following trade designations, in, into, or from the United States: "Click2Coach;" "Smart Agent;" "Performance Suite;" "Business Intelligence;" "Identity Protection;" "Performance Analytics;" "Centricity;" "Speech Analytics;" "Performance Assurance;" "Clik2Coach Cloud;" "Full-Time Recording;" "Quality Monitoring;" "InteractionIQ;" and "SpeechMiner."

9.      On information and belief, Envision implements and integrates its products into the contact centers of its customers, and the use of Envision products

by its customers constitutes direct infringement of one or more of the Patents-in-Suit.  For example, Envision's web site includes a page that states, under the heading "Contact Center Software Implementation:"

> Envision's implementation process typically lasts six to eight weeks and is designed to ensure that your software solutions are configured to meet your center's exact requirements. From data gathering to solution design, from project management to installation and testing, Envision professionals assess your situation, create appropriate designs, ensure technical stability and manage the process through to completion.

A true and correct copy of the above-referenced web page is attached hereto as part of Exhibit A.

10.     On information and belief, Envision trains the personnel of its customers to use its products.  For example, Envision's web site includes a page that states, under the heading "Training with a personal touch:"

> To help your employees quickly understand (and more importantly, utilize) the power of Envision technology, we offer a comprehensive range of proven, role-based customized training programs, including on-site instructor-led courses, and web-based training.

The web page specifically references the following training options: "On-site training;" "Ongoing training;" "Post-Implementation training;" and "Yearly two-day site visit."  A true and correct copy of this web page is attached hereto as part of Exhibit A.

11.     On information and belief, Defendant Envision has continuous and systematic contacts with the State of Georgia.  Defendant offers its products for sale in Georgia.  For example, Defendant's web site is interactive and includes an address field under the header "Contact Us."   A true and correct copy of the relevant web page is attached hereto as part of Exhibit A.  A potential customer can fill in his or her contact information in the address field, and a sales representative from Envision will contact the potential customer in response to the submission of the contact information.  Defendant's website provides an address field that has a drop-down tab for the user's state, and the drop down tab lists Georgia, among other states.

12.     On information and belief, Defendant has customers in Georgia.  For example, Defendant's website lists Alere, which maintains an office in Atlanta, as one of Envision's customers.  A true and correct copy of the relevant Envision web page is attached hereto as part of Exhibit A.  A true and correct copy of the relevant Alere web page is attached hereto as Exhibit B.

13.     On information and belief, Defendant maintains a permanent staff of sales and technical personnel who are located in and/or support its activities in Georgia.  Exhibit C, a printout from yellowpages.com, indicates that Defendant maintains, in the greater Atlanta area, an office location at 4550 N. Point Pkwy,

Alpharetta, Georgia 30022.   Exhibit D, which includes printouts from linkedin.com, indicates that Defendant maintains, in the greater Atlanta area, an Executive Director and a Senior Applications Consultant.

## ALLEGATIONS COMMON TO ALL COUNTS

14.    Verint is the sole owner of the entire right, title, and interest in and to U.S. Patent No. 5,790,798 ("the '798 patent"); U.S. Patent No. 6,510,220 ("the '220 patent"); U.S. Patent No. 7,774,854 ("the '854 patent"); U.S. Patent No. RE43,324 ("the '324 patent"); and U.S. Patent No. RE43,386 ("the '386 patent") (collectively, "the Patents-in-Suit").

15.    The '798 and '220 patents are related, i.e., share a common effective filing date and have similar or identical specifications.   Similarly, the '324 and '386 patents are related.

16.    As the owner of the Patents-in-Suit, Verint has the right to bring actions for infringement of the Patents-in-Suit.

17.    On information and belief, Defendant Envision is infringing and has infringed the Patents-in-Suit in violation of 35 U.S.C. § 271.

18.    Defendant Envision infringes the Patents-In-Suit by developing, using, offering to sell, and/or selling in the United States or importing into the United States computer software and/or hardware and/or systems, including the

7

following products: "Click2Coach;" "Smart Agent;" "Workforce Management;" "Performance Suite;" "Business Intelligence;" "Identity Protection;" "Centricity;" "Speech Analytics;" "Performance Assurance;" and "Click2Coach Cloud" (hereinafter collectively the "Accused Products"), and/or by engaging in or practicing in the United States methods or processes covered by the Patents-In-Suit, including such methods or processes which utilize one or more of the Accused Products.

19.     Defendant Envision infringes the Patents-In-Suit by offering to sell or selling within the United States or importing into the United States a component of a product or system that falls within the scope of one or more of the Patents-In-Suit, or a material or apparatus for use in practicing a method or process that falls within the scope of one or more of the Patents-In-Suit, constituting a material part of one or more of the Patents-In-Suit, knowing the same to be especially made or especially adapted for use in an infringement of one or more of the Patents-In-Suit, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

20.     Defendant Envision infringes the Patents-In-Suit by supplying or causing to be supplied in or from the United States all or a substantial portion of components to form a product or system within one or more of the patents in the

Patents-In-Suit, including by supplying or causing to be supplied in or from the United States the Accused Products, in such a manner as to actively induce the combination of such components outside of the United States in a manner that would infringe one or more of the Patents-In-Suit if such combination occurred within the United States.

21.    Defendant Envision infringes the Patents-In-Suit by supplying or causing to be supplied in or from the United States a component of a product or system within one or more of the Patents-In-Suit that is especially made or especially adapted for use according to one or more of the Patents-In-Suit and is not a staple article or commodity of commerce suitable for substantial non-infringing use, knowing that such component is so made or adapted and intending that such component will be combined outside of the United States in a manner that would infringe one or more of the Patents-In-Suit if such combination occurred within the United States, including by supplying or causing to be supplied in or from the United States one or more of the Accused Products.

22.    Envision had actual knowledge and/or notice of the Patents-In-Suit from a time prior to the filing of the present complaint.

23.    By correspondence dated August 23, 2010, to Rodney Kuhn, Chief Executive Officer of Envision, Verint invited Envision to participate in the Verint

OIN program.  OIN is a licensing program under which Verint offers to grant, under reasonable terms, a world-wide license to its extensive portfolio of patents directed, in part, to the analysis, recording, monitoring, transmission, and/or security of electronic communications such as telephonic, facsimile, and e-mail communications.  In its August 23, 2010 correspondence, Verint provided Envision with claim charts showing how Envision's activities fall within the claim scope of various patents within the OIN, including the '798 patent, the '220 patent, and the '854 patent.  True and correct copies of the noted correspondence and claim charts are attached hereto as Exhibit E.

24.    Michael Scott, counsel for Envision, sent responsive correspondence to Verint dated September 23, 2010.  In his correspondence, Mr. Scott denied that Envision was infringing any of the noted patents and, notwithstanding the claim charts provided with the August 23, 2010 correspondence, requested "a detailed analysis" supporting Verint's allegations of infringement. A true and correct copy of Mr. Scott's September 23, 2010 correspondence is attached hereto as Exhibit F.

25.    On October 14, 2010, Verint sent correspondence to Mr. Scott expressing its disappointment that Envision failed to appreciate the risks of not participating in the OIN, and asking Mr. Scott to advise Verint of his availability to discuss Verint's patent portfolio and licensing opportunities. Verint also informed

Mr. Scott that Envision's conduct constituted willful infringement of Verint's intellectual property rights.  A true and correct copy of Verint's October 14, 2010 correspondence is attached hereto as Exhibit G.

26.    Upon receiving no response from Mr. Scott, Verint, on January 18, 2011; March  19, 2011; and again on July 15, 2011, sent follow-up correspondence to Mr. Scott requesting a response and again informing Mr. Scott that Envision's conduct constituted willful infringement of Verint's intellectual property rights. True and correct copies of this correspondence are attached hereto as Exhibit H.

27.    On August 18, 2011, Verint sent further correspondence to Mr. Scott informing him that Verint had recently obtained another participant in the OIN, and once again asking Mr. Scott to provide an indication of his availability for a discussion relating to this matter.  A true and correct copy of this correspondence is attached hereto as Exhibit I.

28.    Having heard nothing further from Mr. Scott as of March 13, 2012, Verint sent additional correspondence to Mr. Scott informing him that Verint had recently obtained yet another participant in the OIN, and again asking Mr. Scott to provide an indication of his availability for a discussion relating to this matter. Verint again informed Mr. Scott that Envision's conduct constituted willful infringement of Verint's intellectual property rights.  A true and correct copy of

this correspondence is attached hereto as Exhibit J.

29.     On April 24, 2013, Verint, through its counsel, sent correspondence to Mr. Scott forwarding a copy of a complaint in which some of the patents being asserted in the present complaint were asserted against another entity.  Verint, in this correspondence, also reiterated its invitation for Envision to obtain a license relating to Verint's patent portfolio on reasonable terms.  A true and correct copy of the forwarding correspondence is attached hereto as Exhibit K.

30.     After failing to receive any response from Mr. Scott, Verint's counsel sent follow-up correspondence to Mr. Scott on July 5, 2013, expressing its concern over the lack of a response, and repeating its invitation for Envision to join the OIN on reasonable terms.  Mr. Scott replied by way of correspondence dated July 29, 2013, in which he acknowledged receipt of the July 5, 2013 letter, and indicated that Envision was reviewing its technology and Verint's patent portfolio. Mr. Scott stated that he would inform Verint of Envision's decision regarding licensing upon completion of the review.   True and correct copies of the correspondence referenced in this paragraph are attached hereto as Exhibit L.

31.     On August 7, 2013, Verint's counsel sent an email to Mr. Scott forwarding a copy of another complaint in which some of the patents being asserted in the present complaint were asserted against another entity.  Mr. Scott

replied in an e-mail dated August 14, 2013 that Envision would review the matter and respond in due course.   True and correct copies of the forwarding correspondence, and Mr. Scott's reply, are attached hereto as Exhibit M.

32.   On August 15, 2013, Verint's counsel sent an email to Mr. Scott forwarding a copy of a complaint in which some of the patents being asserted in the present complaint were asserted against the entity referred to in paragraph 29 above.   A true and correct copy of the forwarding correspondence is attached hereto as Exhibit N.

33.   In subsequent communications between Mr. Scott and Verint's counsel, Mr. Scott requested that, given the size of Verint's patent portfolio (and notwithstanding that Verint had previously provided claim charts directed to a subset of the patent portfolio), Verint identify particular patents upon which Envision should focus its analysis.

34.   On December 9, 2013, Verint, through its counsel, sent Mr. Scott claim charts relating to all of the Patents-in-Suit in the present action.   Verint indicated that these claim charts would provide the most relative benefit during what Verint believed would be upcoming licensing negotiations.   True and correct copies of these claim charts and the accompanying correspondence are attached hereto as Exhibit O.

35.    In his last correspondence to Verint's counsel, an e-mail dated December 13, 2013, Mr. Scott indicated that he had discussed this matter with Envision, and that "[o]nce we have had an opportunity to thoroughly review the claim charts you've provided, and completed our analysis, we will let you know whether we think licensing discussions would be in our mutual interests, and whether entering into a confidentiality agreement would be conducive to such discussions."  A true and correct copy of this correspondence is attached hereto as Exhibit P.

36.    Despite Verint providing Envision with multiple opportunities for an amicable resolution, no licensing arrangement has been reached between the parties.

37.    Verint has been damaged as a result of Envision's acts of patent infringement in an amount to be determined at trial.

38.    Verint will suffer imminent and irreparable injury unless this Court enjoins Envision from further acts of infringement.

39.    Envision's acts of infringement have been carried out deliberately and willfully, without the consent of Verint, at least with respect to the '798 patent; '220 patent; and the '854 patent, entitling Plaintiffs to treble damages under 35 U.S.C. § 284.

14

40.     This is an exceptional case entitling Verint to an award of attorneys'
fees under 35 U.S.C. § 285.

## COUNT I
## (Infringement of the '798 patent)

41.     Plaintiffs incorporate by reference each and every allegation contained
in paragraphs 1 through 40 above.

42.     The '798 patent, entitled "Method and Apparatus for Simultaneously
Monitoring Computer User Screen and Telephone Activity From a Remote
Location," was duly and legally issued on August 4, 1998 and is currently in full
force and effect and has been since the date of issuance.  A true and correct copy of
the '798 patent is attached hereto as Exhibit Q.

## COUNT II
## (Infringement of the '220 patent)

43.     Plaintiffs incorporate by reference each and every allegation contained
in paragraphs 1 through 42 above.

44.     The '220 patent, entitled "Method and Apparatus for Simultaneously
Monitoring Computer User Screen and Telephone Activity from a Remote
Location," was duly and legally issued on January 21, 2003 and is currently in full
force and effect and has been since the date of issuance.  A true and correct copy of
the '220 patent is attached hereto as Exhibit R.

**COUNT III**
**(Infringement of the '854 patent)**

45.    Plaintiffs incorporate by reference each and every allegation contained in paragraphs 1 through 44 above.

46.    The '854 patent, entitled "Systems and Methods for Protecting Information," was duly and legally issued on August 10, 2010 and is currently in full force and effect and has been since the date of issuance.  A true and correct copy of the '854 patent is attached hereto as Exhibit S.

**COUNT IV**
**(Infringement of the '324 patent)**

47.    Plaintiffs incorporate by reference each and every allegation contained in paragraphs 1 through 46 above.

48.    The '324 patent, entitled "VOIP Voice Interaction Monitor," was duly and legally issued on April 24, 2012 and is currently in full force and effect and has been since the date of issuance.  A true and correct copy of the '324 patent is attached hereto as Exhibit T.

**COUNT V**
**(Infringement of the '386 patent)**

49.    Plaintiffs incorporate by reference each and every allegation contained in paragraphs 1 through 48 above.

50.    The '386 patent, entitled "Communication Management System for

16

Network-Based Telephones," was duly and legally issued on May 15, 2012 and is currently in full force and effect and has been since the date of issuance. A true and correct copy of the '386 patent is attached hereto as Exhibit U.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

1.    That Defendant Envision has been and is infringing, is contributing to the infringement of, and is actively inducing infringement of the Patents-in-Suit;

2.    That Defendant and its officers, agents, and employees and all others in concert or participation with them be preliminarily and permanently enjoined from further acts of infringement of the Patents-in-Suit under 35 U.S.C. § 283;

3.    That Plaintiffs be awarded damages adequate to compensate them for Defendant's infringement of the Patents-in-Suit, together with interest and costs under 35 U.S.C. § 284;

4.    That Plaintiffs be awarded treble the damages they have incurred by reasons of Defendant's acts of deliberate and willful infringement of the Patents-in-Suit under 35 U.S.C. § 284;

5.    That Defendant be required to pay Plaintiffs' reasonable attorneys' fees in connection with this action as provided in 35 U.S.C. § 285;

6.    That Defendant be directed to file with this Court and serve on

Plaintiffs within thirty (30) days after service of an injunction, a report in writing, under oath, setting forth in detail the manner and form in which Defendant has complied with this injunction ordered by this Court;

7.     That Defendant be required to pay all of Plaintiffs' costs and expenses, including expert witness fees; and

8.     That Plaintiffs be awarded such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury on all issues raised by the Complaint.

Respectfully submitted, this 29th day of January, 2014.

MEUNIER CARLIN & CURFMAN, LLC

/s/ Walter Hill Levie, III
Stephen M. Schaetzel
Georgia State Bar No. 628653
*sschaetzel@mcciplaw.com*
Walter Hill Levie, III
Georgia State Bar No. 415569
*tlevie@mcciplaw.com*
David S. Moreland
Georgia State Bar No. 521998
*dmoreland@mcciplaw.com*
817 West Peachtree Street, NW
Suite 500
Atlanta, Georgia 30308
Telephone: (404) 645-7700
Facsimile: (404) 645-7707

*Attorneys for Plaintiffs*
*Verint Systems Inc. and*
*Verint Americas Inc.*

*Of Counsel*:

Joseph F. Posillico, Esq.
Frank T. Carroll, Esq.
Ryan N. Miller, Esq.
FOX ROTHSCHILD LLP
2000 Market Street, 20th Floor
Philadelphia, PA 19103-3222
Telephone: (215) 299-2000